**SHARKEY, Plaintiff-Appellee, v. SHARKEY, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2352.   Decided December 8, 1955.

Horace W. Baggott, Orel J. Myers, Dayton, for plaintiff-appellee.

Estabrook, Finn & McKee, Dayton, by Chester E. Finn, of Counsel, for defendant-appellant.

(COLLIER, J, of the Fourth District, sitting by designation in the Second District.)

## OPINION

By MILLER, PJ.

This is a law appeal from a judgment of the Common Pleas Court awarding a decree of divorce and alimony to the plaintiff-appellee, Thomas P. Sharkey. The defendant-appellant is the wife, Mary Eugenia Sharkey, and for convenience we shall refer to the parties hereafter as plaintiff and defendant.

The record reveals that the case came on for hearing on the petition, the amended answer and cross-petition, and reply to the same. The grounds for the divorce were based upon gross neglect of duty and extreme cruelty.

The amended answer was a general denial, and for a second defense condonation was pleaded. By way of cross-petition the defendant alleged that at all times she conducted herself as a dutiful wife, but that

the plaintiff has been guilty of gross neglect of duty and extreme cruelty in certain particulars. She asked that she be awarded alimony and such other relief to which she may be entitled by law.

The reply was a general denial to the new matter set forth in the answer and also to the cross-petition.

A request for a separate finding of facts and conclusions of law was seasonably filed, and this request was granted by the court. It not only stated its conclusions of fact, but also included in its findings the facts upon which it based its conclusions; hence it is of considerable length, covering some eight pages. A sufficient summary of the same is contained in the court's conclusions of law in order for us to determine the correctness of the divorce decree, as well as the alimony award. These questions are raised in the fourth and fifth assignments of error. We shall therefore quote the court's legal conclusions with reference to the same.

"The petition of the plaintiff asks for divorce upon the grounds of gross neglect of duty and extreme cruelty.

"The amended answer and cross-petition of the defendant contains two defenses: (1) a general denial and (2) condonation. The cross petition asks for alimony alone, upon two grounds, (1) gross neglect of duty and (2) extreme cruelty. As to the latter ground for alimony, there is no such ground set forth in §3105.17 R. C., but the Court considers this pleading to mean 'A separation in consequence of the ill treatment of the adverse party,' since it is not necessary to plead in the exact words of the Code.

"To this amended answer and cross petition, the plaintiff filed a reply, denying the allegations respecting condonation and generally denying the allegations of the cross petition.

"Upon the issues joined by these pleadings, the Court finds that the jurisdictional requirements of residence, and service, have been admitted or proved.

"There are certain legal questions involved herein. Taking the plaintiff's petition, we must determine:

"**FIRST**: The grounds for divorce are extreme cruelty and gross neglect of duty.

"There was a time when extreme cruelty was considered to mean personal physical violence inflicted by one upon another, but for many years it has been understood to include any act, which 'is calculated permanently to destroy the peace of mind and happiness of the other so as utterly to destroy the objects of matrimony.' 27 Corpus Juris Secundum, 552, Section 28.

"This definition has been adopted by the Courts of Ohio.

" 'The term "extreme cruelty," as used in §11979 GC, is not limited in scope to acts of physical violence or the reasonable apprehension thereof, but is sufficiently broad to encompass acts and conduct, the effect of which is calculated to permanently destroy the peace of mind and happiness of one of the parties to the marriage and thereby render the marital union intolerable.' **Buess v. Buess, 89 Oh Ap 37; 45 O. O. 331.**

"The Court finds that defendant has committed acts of aggression

against plaintiff by nagging and accusing the plaintiff of improper interest in another woman, of speaking falsely of her to their mutual acquaintances and friends, which accusations of the defendant and the denials of the plaintiff often continued until very late hours of the night and early morning, causing the plaintiff to lose sleep, which directly affected his ability to work. The Court finds that this course of conduct, and the hostility of the defendant toward the plaintiff was very much aggravated when she was under the influence of intoxicants and that its deleterious effect upon the plaintiff after he became ill in 1953 and 1954, was such as to affect directly the health and peace of mind of the plaintiff, to such an extent as to 'permanently destroy the peace of mind,' the happiness and the health of the plaintiff. The plaintiff has established this ground by a preponderance of evidence.

"SECOND: We pass now to a consideration of the ground for divorce, gross neglect of duty.

"This ground for divorce has been said to be 'elusive of concrete definition.' Among the duties and obligations of married people and, perhaps the guiding star to a proper relation, stands the duty of mutual fidelity and respect, see §3103.01 R. C.:

" 'The term "any gross neglect of duty" made one of the causes for divorce under §11979 GC is elusive of definition and its application as a cause for granting a divorce must depend upon the circumstances of the particular case.' Porter v. Lerch, 129 Oh St 47; 1 O. O. 356.

"The Court in determining the circumstances of each case and determining whether they amount to 'gross neglect of duty' in any given case, must use its sound discretion.

" '1. In a divorce action what constitutes gross neglect of duty or extreme cruelty in any given case must be left to the sound discretion of the Court.' Coleman v. Coleman, 68 Abs 410.

"The Buess case has stated it in the following words:

" '1. The term "gross neglect of duty," one of the grounds named in §11979 GC, is not possible of precise definition, and where such ground is asserted the trial court has broad discretion in interpreting the term.' Buess v. Buess, 89 Oh Ap 37; 45 O. O. 331.

"In this case the evidence of the plaintiff that the defendant quarreled with him without just cause, that she cursed and vilified him in the presence of mutual friends and domestic help, that she also called his daughter, by a former marriage, an improper name and spoke disparagingly of her, is certain and clear to the point that it shows a lack of respect, amounting to a disregard of the plaintiff's feelings toward the defendant and toward his only daughter.

"The evidence of the defendant's excessive drinking, corroborated again by the testimony of mutual friends, domestics and admitted by the defendant to Dr. Goldman, her phychiatrist, who appeared as a witness for the defendant, seems to place this fact beyond serious doubt.

"The plaintiff supplied the defendant with domestic help, adequate housing, prepared his own breakfasts, purchased many of their evening meals in restaurants, so that there were few of the normal household duties for the defendant to perform. Generally, however, the defendant made the household purchases, handled the finances and kept the ac-

counts of the parties and in this aspect of the marriage manifested interest, however upon the trial of the case only a partial accounting of her stewardship of the finances was given; the accounting for the cash accumulated in the safety deposit box up to June 23, 1953, although under her complete control, was not given except for the memo of cash, Plaintiff's Exhibit 'A,' showing $12,378.00 on or about the 1st day of January, 1953.

"From all of these facts in the case, the Court concludes that the plaintiff has established the ground gross neglect of duty by a preponderance of the evidence.

"The Court, therefore, finds in favor of the plaintiff upon both causes of action and against the defendant upon her first defense."

\*   \*   \*   \*   \*

"SIXTH: Coming now to consider the prayer of the petition for alimony, the Statute provides:

" 'The Court of Common Pleas may allow alimony as it deems reasonable to either party, having due regard to property, which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either at the time of the decree. Such alimony may be allowed in real or personal property or both by decreeing money payable either in gross or by installments, as the court deems equitable.' Sec. 3105.18 R. C.

"The recent amendments to our law culminating in the adoption of the above section have liberalized the meaning of the word alimony and greatly broadened the discretion of the Court in awarding it."

The court found that the plaintiff, at the time of his marriage on November 4, 1950, possessed the following property:

Savings Associations deposits, cash values in life insurance, U. S. Bonds, automobile, house in Dayton, Ohio, mortgage on another property, cabin cruiser, household furniture, and office furniture and equipment, totaling approximately $39,453.20, together with his retirement pension, U. S. Navy, $235.16 monthly.

The court found that the defendant, at the time of her marriage, possessed an Oldsmoboile, 1950 model, and jewelry of the value of $8000.00, all of which were presents from the plaintiff.

The parties now have the following property:

Property of the plaintiff, amounting to $46,700.07; property of defendant, $10,520.00, together with an Oldsmobile; property held jointly, $34,700.00.

The jointly held property consisted of the home located at 2500 Ridgeway Road, valued at $25,000.00; United States Savings Bonds, valued at $7000.00; and 150 shares of Winters Bank stock. valued at $2700.00. The court decreed that each of the parties shall retain the property they now possess, and in addition thereto the plaintiff was awarded the defendant's one-half interest in the Ridgeway Road home, together with the furnishings, and each of the parties was to retain their one-half interest in the United States Savings Bonds, valued at $7000.00, and the 150 shares of Winters Bank stock, valued at $2700.00. Thus, of the jointly held property, the defendant was awarded the sum of $4850.00, while the plaintiff was awarded a like sum, plus the defendant's one-

half interest in the home, valued at $12,500.00. In making these awards the court no doubt took into consideration the fact that it found under special finding of fact No. 19 that the defendant, some time prior to June 22, 1953, had removed from their jointly held lock box the sum of $17,000.00 and placed it in her own private box. Therefore, she really gets the total sum of $21,850.00 out of the jointly held property, to-wit: $17,000 plus $4850.00, while out of the same property the plaintiff was decreed the sum of $17,350.00, which consisted of the $12,500.00 interest in the home, plus stocks and bonds valued at $4850.00.

In determining the reasonableness of the property settlement it should be noted that the Court found no facts which would constitute grounds for awarding alimony to the defendant under §3105.17 R. C.; hence she was not entitled to such an award.

It should be further noted that under §3105.18 R. C., the plaintiff was entitled to a reasonable alimony award. This section provides:

"The court of common pleas may award alimony as it deems reasonable to either party, having due regard to property which came to either by their marriage, the earning capacity of either and the value of real and personal estate of either, at the time of the decree."

In determining what constituted a reasonable alimony award to the husband, it was proper that the court give consideration to its special findings of fact Nos. 28 and 29, wherein the court found that the defendant was a trained and skilled registered nurse, in a good state of health, and of the age of twenty-nine years, while the plaintiff was of the age of fifty-one years, in ill health, and may not be able to resume his medical practice for quite some period of time, if ever.

It was also proper that the court take into consideration the fact that the marriage of these parties was of only approximately three and one-half years duration.

The grounds for awarding alimony to the husband were clearly established in the factual findings, and we cannot say that the court abused its discretion in making the award. We may not substitute our judgment for that of the trial court. **Henry v. Henry, 157 Oh St 319; Trickey v. Trickey, 158 Oh St 9.**

The first assignment of error charges that the defendant was denied a fair trial by reason of the court's bias and prejudice in the following particulars:

1. Requiring the defendant to proceed with her defense prior to the conclusion of the plaintiff's case in chief.

2. Refusing to permit the defendant to amend her cross-petition at the conclusion of the plaintiff's case, it appearing that the defendant desired to also petition for a divorce.

3. That the court accepted the hospitality of the plaintiff in his apartment.

4. By journalizing the entry overruling the defendant's motion for a new trial while the defendant sought a delay.

5. By refusing counsel for the defendant permission to cross-examine George Lane, a rebuttal witness, on certain matters in order to test his credibility.

Specifications 1, 2, 4 and 5, supra, all pertain to matters which were discretionary with the trial court, and the court's ruling on each of them does not indicate to us any acts of bias or prejudice.

As to the first specification under this heading, it appears that the plaintiff was too ill to be in court when his case was concluded in all respects with the exception of his further cross-examination by the defendant. With this reservation, the court ordered the trial to proceed, giving the defendant the right to complete the cross-examination at a later time. This order was not prejudicial, for the reason that the order of introducing evidence in the progress of a trial rests in the sound discretion of the court. Sec. 2315.01 R. C.; Shahan v. Swan, 48 Oh St 25; Bean v. Green, 33 Oh St 444; In re Estate of Decker, 83 Oh Ap 169; Cook v. Williams, 92 Oh Ap 277.

The matter of permitting the defendant to file a cross-petition for a divorce after the plaintiff had rested his case was also a discretionary matter. If granted, it would have caused a delay in the trial for at least six weeks in order to acquire service and comply with the period of waiting time required by statute. We therefore cannot say that the court acted arbitrarily in denying the defendant this privilege.

With reference to the premature filing of the entry overruling the defendant's motion for new trial, the record reveals that the motion was filed on February 15, 1955, that the same was heard on February 24, 1955, and the entry was not filed until June 24, 1955. We are not able to find any irregularity in this procedure, even though the defendant desired a further delay. Counsel for the defendant urges that counsel for the plaintiff must have appeared personally before the court and in his absence secured the court's approval. However, we find nothing in the record to support such a conclusion. We find no merit in the charge that the court accepted the hospitality of the plaintiff after the conclusion of the plaintiff's cross-examination, in his own apartment, the plaintiff being too ill to appear in court at that time.

The second and third assignments of error relate to findings of fact which it is claimed are not supported by any evidence in the record, and also error in not finding other pertinent facts which were undisputed and uncontradicted. As to these specifications it must be noted that the court is the sole trier of the facts, and this Court is not permitted to make further factual findings. The judgment can stand only on the facts found by the trial court, and facts not found by it are presumed not to exist. Urner v. State, 51 Oh Ap 97. The bill of exceptions in this case contains 1359 pages of testimony, which we have carefully examined and find much of the testimony in direct conflict; hence it became the duty of the trial court to resolve wherein the truth lay. If a witness wilfully testifies falsely to a material fact, it so far throws suspicion on his entire testimony that if he is not corroborated, his entire testimony may be rejected as not worthy of credence. Dye v. Scott, 35 Oh St 194. When he testifies falsely about any material matter the court or jury may assume that he has testified falsely about all matters concerning which he has given testimony. Holmes v. Holland, 11 O. Dec. Rep. 768, 29 Ball 115. See also 42 O. Jur. 476, Sec. 470.

We find substantial evidence in the record supporting all of the findings of fact material to the issues presented and if credence is given to the same it may not be said that they are not supported by the proper degree of proof.

We find no prejudicial error in the record and the judgment will be affirmed.

HORNBECK and COLLIER, JJ, concur.